```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
NORTHFIELD INSURANCE COMPANY,              :
                                           :
                          Plaintiff,       :         MEMORANDUM
                                           :         & ORDER
             -against-                     :         16-CV-471 (SMG)
                                           :
QUEEN'S PALACE, INC., ROSEWOOD REALTY,     :
LLC, NYC KAZI OFFICE INC., and VICENTA     :
MORAN, as Administratrix of the Estate of Eduardo :
Rojas,                                     :
                                           :
                          Defendants.      :
------------------------------------------------------------------x
```
GOLD, STEVEN M., U.S. Magistrate Judge:

## INTRODUCTION

Northfield Insurance Co. ("Northfield") brings this action seeking a judgment declaring that it has no duty to defend or indemnify defendants Queen's Palace, Inc. ("Queen's Palace"), Rosewood Realty, LLC ("Rosewood"), and NYC Kazi Office Inc. ("NYC Kazi") (collectively, "defendants"), in an underlying action filed in Supreme Court, Kings County, by defendant Vicenta Moran as Administratrix of the Estate of Eduardo Rojas (the "Estate"). *See* Compl. ¶ 1, Docket Entry 1. In the underlying action, the Estate seeks damages for the wrongful death of Eduardo Rojas (the "decedent"), who was allegedly "assaulted, dragged, pistol whipped[,] and killed" on July 26, 2014, while outside and waiting to enter a nightclub located at 37-11 57th Street, Woodside, New York (the "premises"). *Id.*

The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). *See* Docket Entry 25. Plaintiff now moves for summary judgment. Docket Entry 36. I heard oral argument on the motion on November 10, 2016. Docket Entry 46. Counsel for Queen's Palace and NYC Kazi elected not to appear for the

argument. Docket Entry 45. I reserved decision to afford counsel for these parties an opportunity to be heard after reviewing the oral argument transcript. *See* Order dated November 9, 2016. Counsel for these parties then submitted a post-argument letter brief. Docket Entry 48.

I have considered the parties' written submission and oral arguments. For the reasons that follow, plaintiff's motion for summary judgment is granted.

## FACTS

The following facts present the evidence in the light most favorable to defendants.[1] *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Northfield issued a general commercial liability insurance policy to Queen's Palace (the "policy") covering the period from March 11, 2014 to March 11, 2015. Pl. R. 56.1 ¶ 1. The policy provides liability coverage for suits claiming damages because of "bodily injury," defined to include death, caused by an "occurrence," which the policy defines as an accident. Pl. R. 56.1 ¶ 2. The policy limits liability to $1 million for each occurrence and $2 million in the aggregate. First Crecelius Aff. ¶ 2.

By endorsement, the policy contains an Assault and Battery Exclusion, which provides, in pertinent part:

1. The following exclusion is added to Paragraph 2., Exclusions, of Section I – Coverages – Coverage A Bodily Injury and Property Damage Liability: Assault or Battery

   "Bodily injury" or "property damage" arising out of any act or "assault" or "battery" committed by any person, including any act or omission in

---

[1] The facts set forth in the text are drawn from the following: Plaintiff's Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Pl. R. 56.1"), Docket Entry 36-1; Defendant Rosewood's Counterstatement of Material Facts ("Rosewood R. 56.1"), Docket Entry 39; Defendant Moran's Counterstatement of Material Facts ("Moran R. 56.1"), Docket Entry 42; and the Declaration of Satish K. Bhatia ("Bhatia Decl."), dated September 30, 2016, Docket Entry 40. In addition, supporting evidentiary materials were submitted as exhibits to the Declaration of Joanne M. Engeldrum ("Engeldrum Decl."), dated September 2, 2016, Docket Entry 36-2; the Affidavit of Gail E. Crecelius ("First Crecelius Aff."), dated August 5, 2016, Docket Entry 36-14; and the Affidavit of Gail E. Crecelius ("Second Crecelius Aff."), dated October 11, 2016, Docket Entry 43-1.

> connection with the prevention or suppression of such "assault" or "battery".
>
> * * *
>
> 2. The following is added to the DEFINITIONS Section:
> "Assault" means any attempt or threat to inflict injury to another, including any conduct that would reasonably place another in apprehension of such injury.
> "Battery" means any intentional, reckless or offensive physical contact with, or any use of force against, a person without his or her consent that inflicts some injury, regardless of whether the resulting injury infl[icted] is intended or expected.

Affidavit of Kenneth Kupec ("Kupec Aff.") at NIC 000556, Docket Entry 36-13; *see also* First Crecelius Aff. ¶ 4.

On July 26, 2014, the decedent was beaten to death while standing in line waiting to enter the premises. Moran R. 56.1 ¶ 2; Pl. R. 56.1 ¶ 4. According to the complaint filed by the Estate in the underlying action, Rosewood is the owner of the premises, while Queen's Palace and/or NYC Kazi Office Inc. are the lessees and operators of the nightclub located there. Pl. R. 56.1 ¶ 9; Complaint in Moran v. Rosewood Realty, L.L.C. et al. ("Underlying Compl.") ¶¶ 7-9, Engeldrum Decl., Ex. 1, Docket Entry 36-3. The Estate's complaint further alleges that, while the decedent was standing in line, a group of individuals was forcibly removed from the nightclub by security officers. Underlying Compl. ¶ 17. These individuals were armed and, upon being removed from the club, they began shooting at individuals waiting outside to enter. Underlying Compl. ¶ 18. The Estate claims that decedent "was assaulted, dragged, pistol whipped, and killed by the individuals being removed from the Premises." Underlying Compl. ¶ 20. The Estate seeks damages from Rosewood, Queen's Palace, and NYC Kazi for negligently failing to provide proper security at the premises. Underlying Compl. ¶ 19.

Plaintiff first received notice of the July 26, 2014 assault by letter dated April 2, 2015, from AmTrust North America ("AmTrust"), the administrator for Tower Insurance Company of

New York, Rosewood's liability carrier. First Crecelius Aff. ¶ 5. Northfield received the letter from AmTrust on April 8, 2015. *Id.* AmTrust's letter advised Northfield that the decedent was allegedly assaulted and killed by patrons of the nightclub and asserted that, pursuant to Rosewood's lease agreement with Queen's Palace, Northfield's insured, Northfield was required to defend and indemnify Rosewood. Letter from AmTrust to Northfield Insurance Co., dated April 2, 2015, Docket Entry 36-15.

On April 20, 2015, Gail Crecelius ("Crecelius"), a claim professional for Northfield, spoke with Syed Mustaquim Ballah ("Billah") of Queen's Palace and informed Billah that Northfield was disclaiming coverage based upon the policy's Assault and Battery Exclusion. First Crecelius Aff. ¶ 6. Northfield reiterated this position in a letter dated April 27, 2015, addressed to Rosewood and AmTrust and copied to the other defendants. *See* Letter from Northfield to Rosewood and AmTrust, dated April 27, 2015, First Crecelius Aff., Ex. B, Docket Entry 36-16. In particular, Northfield disclaimed coverage based on the Assault and Battery Exclusion "because the injury to [decedent] arose out of the assault and/or battery of [decedent] committed by any person," and because Northfield did not receive timely notice of the occurrence from the insured as the policy requires. *Id.* at 5.

Defendants contend that Northfield's disclaimer of coverage was untimely and thus ineffective under N.Y. Ins. Law § 3420(d) because, "upon information and belief," the copy of its April 27 letter addressed to Queen's Palace was returned to sender as undeliverable and Queen's Palace never received it. *See* Rosewood's Memorandum of Law in Opposition to Summary Judgment ("Rosewood Mem.") at 7, 9-11, Docket Entry 39. According to Crecelius, however, the April 27 letter disclaiming coverage was sent to Queen's Palace by both certified and first class mail directed to the address listed on the policy and the address provided by

4

Queen's Palace's broker, DurAmerica Brokerage, Inc. ("DurAmerica"). Second Crecelius Aff. ¶ 2. The letter was returned, but as unclaimed—not as undeliverable. *See* Envelope Marked "Return to Sender, Unclaimed, Unable to Forward," Second Crecelius Aff., Ex. A, Docket Entry 43-2. Northfield also sent letters disclaiming coverage for the incident via certified and first class mail to DurAmerica, Rosewood, Rosewood's counsel, AmTrust, NYC Kazi, and Billah's residence. First Creclius Aff ¶¶ 7-9. While certain letters sent by certified mail were returned to Northfield as "unclaimed," the first class mailings were not returned. *See* Second Crecelius Aff. ¶¶ 3-4; *see also* Rosewood Mem., Ex. E, Docket Entry 39-5.

The Estate filed the underlying action for wrongful death on or about August 22, 2015, in Supreme Court, Kings County against Queen's Palace, Rosewood, and NYC Kazi, claiming that defendants negligently failed to provide proper security at the premises. Underlying Compl. ¶¶ 17-20. On January 7, 2016, counsel for the Estate notified Northfield that the underlying action had been filed. First Crecelius Aff. ¶ 10. By letter dated January 27, 2016, Northfield again disclaimed coverage to Queen's Palace, Rosewood, and NYC Kazi on the basis of the Assault and Battery Exclusion. First Crecelius Aff. ¶¶ 11-13. On January 29, 2016, Northfield commenced this action seeking a declaration that it has no duty to defend or indemnify any of the parties. Compl. ¶ 30.

Plaintiff moved for summary judgment on September 2, 2016, asserting that coverage is precluded because decedent's wrongful death was the result of an assault and battery. Plaintiff's Memorandum of Law in Support of Summary Judgment at 6-10, Docket Entry 36-22. In their respective submissions, defendants argue, among other things, that (i) irrespective of the exclusion for assault and battery and whether plaintiff will ultimately be required to indemnify defendants, plaintiff nevertheless has a duty to defend the insureds in the underlying action; and

(ii) plaintiff is precluded from invoking the Assault and Battery Exclusion to disclaim coverage because its disclaimer was untimely and thus ineffective under N.Y. Ins. Law § 3420(d). Rosewood Mem. at 7, 9-11; Moran's Memorandum of Law in Opposition to Summary Judgment at 3-6, Docket Entry 42.

DISCUSSION

I.    *Summary Judgment Standard*

Summary judgment is properly granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The Court is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks and citation omitted).

The initial burden of establishing that there are no genuine issues of material fact falls on the moving party; if the movant meets that burden, the non-moving party must produce evidence of specific facts that raise a genuine issue for trial to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996). Mere conclusory allegations are insufficient; "[t]here must be more than a 'scintilla of evidence'" to defeat a summary judgment motion. *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252).

II.    *The Assault and Battery Exclusion*

As a general matter, New York law imposes a duty upon an insurer to defend its insured where the allegations of the complaint in the underlying action, "liberally construed, suggest a

reasonable possibility of coverage."[2] *Burgund v. ESP Café, Inc.*, 84 A.D.3d 849, 850 (2d Dep't 2011) (citing *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 65 (1991)). Where, however, the factual "allegations of the complaint put it solely within the policy exclusion[,]" the insurer has no duty to defend or indemnify. *Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 162 (1992) (quoting *Int'l Paper Co. v. Cont'l Cas. Co.*, 35 N.Y.2d 322, 325 (1974)).

When an insurer invokes an exclusion as its basis for denying coverage and declining to provide a defense, "the burden rests upon the insurance company to demonstrate that the allegations of the complaint can be interpreted only to exclude coverage." *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 444 (2002) (citations omitted). Here, as explained below, plaintiff has met that burden.

It is well-settled that, where, as here, a general commercial liability insurance policy has an assault and battery exclusion and where no cause of action would exist "but for" an assault, the underlying tort claim is "based on" the assault, the exclusion precludes coverage, and the insurer has no duty to defend or indemnify the insured. Moreover, such an exclusion precludes coverage regardless of the theory of liability asserted against the insured. *See, e.g.*, *White v. Nat'l Specialty Ins. Co.*, 2014 WL 3871351, at *1 (E.D.N.Y. Aug. 6, 2014) (holding that assault and battery exclusion precluded coverage for negligence claim); *Mount Vernon Fire Ins. Co. v. Creative Housing Ltd.*, 88 N.Y.2d 347, 352 (1996) (holding assault and battery exclusion precluded coverage where plaintiff in underlying action was criminally assaulted on insured's premises, even though theory of liability against insured "sound[ed] in negligence"); *U.S.*

---

[2] "A federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which that court sits." *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 151 (2d Cir. 2013) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 494-97 (1941)). The New York choice of law analysis in a contract dispute focuses on the "center of gravity" of the contract, which for an insurance contract is typically the state where the insured risk is located. *Liberty Mutual Ins. Co. v. Fairbanks Co.*, 170 F. Supp. 3d 634, 642 (S.D.N.Y. 2016). Here, Queen's Palace, the insured, is a New York corporation with its principal place of business located in Queens, New York. *See* Compl. ¶ 6. Accordingly, New York law controls.

7

*Underwriters Ins. Co. v. Val-Blue Corp.*, 85 N.Y.2d 821, 823 (1995) (same); *Burgund*, 84 A.D.3d at 851 (holding that insurer had no duty to defend where there was an assault and battery exclusion and none of the causes of action in the underlying lawsuit "would exist but for the alleged assault and battery"); *WSTC Corp. v. Nat'l Specialty Ins. Co.*, 67 A.D.3d 781, 782 (2d Dep't 2009) (holding that a negligence claim "arising out of an assault" did not give rise to a duty to defend where the policy contained an assault and battery exclusion); *Sphere Drake Ins. Co. v. Block 7206 Corp.*, 265 A.D.2d 78, 80 (2d Dep't 2000) ("[T]he Court of Appeals has, in general, given assault and battery exclusions a broad construction.").

The principle that an assault and battery exclusion precludes coverage where no cause of action would exist but for an assault applies not only regardless of whether a claim sounding in negligence is alleged against the insured, but also regardless of whether the assault was committed by the insured, an employee of the insured, or a third party. *Mount Vernon Fire Ins. Co.*, 88 N.Y.2d at 353. Thus, for example, in *Val-Blue*, the court held there was no coverage—and no accompanying duty to defend—in a case involving a security guard employed at a nightclub who shot an off-duty police officer. The off-duty officer had apprehended a suspect outside of the nightclub and then entered, gun drawn, seeking to use the club's telephone. 85 N.Y.2d at 822. In his underlying suit for damages against the nightclub, the injured off-duty officer alleged that the security guard "negligently, carelessly, and recklessly" shot him. *Id.* The nightclub's liability insurance carrier sought a judgment declaring that it was not required to defend or indemnify the club because its policy contained an assault and battery exclusion. The exclusion, like the one at issue here, provided that "no coverage shall apply under this policy for any claim, demand or suit based on Assault and Battery and Assault and Battery shall not be

8

deemed an accident, whether or not committed by or at the direction of the insured."[3]  *Id.*  The New York Court of Appeals found this language "unambiguous" and noted that, although the underlying tort suit alleged that the nightclub was negligent, "[t]he injury being sued upon . . . is an assault and battery. . . . without which [the plaintiff in the underlying action] would have no cause of action."  *Id.* at 823.  Accordingly, the court held, the insurer had no duty to defend or indemnify its insured.

A similar result was reached in *Mount Vernon* where, as here, the underlying assault was committed by a stranger to the insured.  In *Mount Vernon*, a tenant who was criminally assaulted in her apartment building brought suit against the building owner alleging "negligent supervision, management[,] and control of the premises."  88 N.Y.2d at 349.  The building owner's insurance carrier sought a judgment declaring that it had no duty to defend or indemnify the owner because its policy, like the one in *Val-Blue*, excluded coverage for claims based on assault and battery.  *Id.* at 350.  The court ruled in favor of the insurer, reasoning that "when a third party perpetrates an assault, the basis of the victim's claim for negligent failure to maintain safe premises against the insured is assault," and that "[m]erely because the insured might be found liable under some theory of negligence does not overcome the policy's exclusion for injury resulting from assault."  *Id.* at 351-52 (citation omitted).

The Assault and Battery Exclusion at issue here unambiguously excludes from coverage "'[b]odily injury' or 'property damage' arising out of any act or 'assault' or 'battery' committed by any person, including any act or omission in connection with the prevention or suppression of

---

[3] There is a slight difference between the language of the assault and battery exclusion in the policy at issue in *Val-Blue* and the one in the Northfield policy at issue here.  The policy in *Val-Blue* excluded coverage for claims "based on" assault and battery, whereas the Northfield policy excludes coverage for bodily injury "arising out of" an assault and battery.  The difference in semantics, however, is immaterial; indeed, the New York Court of Appeals held in *Mount Vernon* that the phrases "'based on' and 'arising out of,' when used in insurance policy exclusion clauses, are unambiguous and legally indistinguishable."  88 N.Y.2d at 351.

such 'assault' or 'battery.'" First Crecelius Aff. ¶ 4. Regardless of whether the Estate asserts claims in the underlying action sounding in negligence, it is clear that those claims would not exist "but for" the assault perpetrated against the decedent. Accordingly, the Assault and Battery Exclusion precludes coverage and plaintiff thus has no obligation under the policy to defend or indemnify defendants in the underlying action.

III. *Disclaimer of Coverage Under N.Y. Ins. Law § 3420(d)*

As noted above, defendants contend that plaintiff Northfield is barred from disclaiming coverage because its disclaimer was untimely and thus ineffective under N.Y. Ins. Law § 3420(d). Defendants, however, have failed to produce any evidence with respect to this issue that raises a genuine issue of fact sufficient to defeat summary judgment.

In their submissions, and again at oral argument, defendants argued "upon information and belief" that, because the notice of disclaimer sent by Northfield to Queen's Palace was never received, it was "untimely" and thus ineffective under N.Y. Ins. Law § 3420(d). *See* Rosewood Mem. at 7, 9-11; Transcript of Oral Argument at 12:20-15:8, Docket Entry 47. Section 3420(d)(2) provides as follows:

> If under a liability policy issued or delivered in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

An insurer who fails to provide notice within the time frame required by the statute is precluded from disclaiming coverage. *Hartford Ins. Co. v. County of Nassau*, 46 N.Y.2d 1028, 1029 (1979) (citation omitted).

In support of its argument, Rosewood has submitted photocopies of envelopes purporting to indicate that the letters sent by Northfield on April 27, 2015, disclaiming coverage were

10

"unclaimed," bearing stickers that read "Return to Sender—Attempted—Not Known—Unable to Forward," or "Return to Sender—Unclaimed—Unable to Forward." Rosewood Mem., Ex. E. However, Rosewood has not submitted an affidavit of a person with knowledge authenticating or describing the significance of the photocopied envelopes, or testimony of anyone with personal knowledge that Queen's Palace or any of the other defendants in fact never received the disclaimer letters sent by plaintiff. The envelopes themselves, absent such supporting testimony, are not admissible evidence and therefore do not raise a genuine issue of material fact sufficient to preclude summary judgment. *See* Fed. R. Civ. P. 56(c)(1); *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014) (observing that admissible evidence is required to defeat summary judgment); *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) ("[I]f the admissible evidence is insufficient to permit a rational juror to find in favor of [the non-moving party], the court remains free to . . . grant summary judgment for [the moving party].") (citation omitted).

Moreover, Queen's Palace—Northfield's insured—admitted in its Answer that Northfield twice disclaimed coverage, in letters dated April 27, 2015, and January 27, 2016. See Compl. ¶ 17; Queen's Palace Answer ¶ 17, Docket Entry 22. Northfield has also submitted a sworn affidavit from Ms. Crecelius, its claim professional, stating that, on April 27, 2015, she mailed letters disclaiming coverage via certified and first class mail to Queen's Palace addressed to "Queen's Palace, Inc./ Attn: Syed Mustaquim Billah and Kaziz Shariatullah/ 37-11 57th Street/ Woodside, NY 11377." First Crecelius Aff. ¶ 8, and Ex. C, Docket Entry 36-17. That is precisely the same address listed for Queen's Palace on the Certificate of Liability Insurance and in the policy itself. *See* Rosewood Mem., Ex. C, Docket Entry 39-3; Kupec Aff. at 3, 14. According to Crecelius, letters disclaiming coverage were also sent via certified and first class

mail to DurAmerica, Rosewood, Rosewood's counsel, AmTrust, NYC Kazi, and Billah's residence. First Crecelius Aff. ¶¶ 7-9.

While certain letters sent by certified mail to defendants were apparently returned to Northfield as "unclaimed," according to Crecelius, the first class mailings were not. Second Crecelius Aff. ¶¶ 3-4, 6-7. Defendants have not submitted any evidence that would be admissible at trial to refute Crecelius' affidavit or otherwise suggest that defendants did not receive the letters sent via first class mail. Defendants, therefore, have failed to present evidence sufficient to raise a material question of fact and defeat summary judgment. *Anderson*, 477 U.S. at 256.

Furthermore, Northfield's disclaimer of coverage was timely. The requirement that a disclaimer be given "as soon as is reasonably possible," N.Y. Ins. Law § 3420(d)(2), is "measured from the time that the insurer has sufficient information to disclaim coverage in good faith." *Webster ex. rel. Webster v. Mount Vernon Fire Ins. Co.*, 368 F.3d 209, 216 (2d Cir. 2004). Here, Northfield first learned of the July 26, 2014 assault on April 8, 2015, more than eight months after the fact, when it received a letter about the incident from defendant Rosewood's liability carrier. First Crecelius Aff. ¶ 5. After conducting an investigation into the claim, Northfield sent letters disclaiming coverage on April 27, 2015, less than three weeks later. *Id.* ¶¶ 7-9.

Although the question of whether a disclaimer has been issued with reasonable promptness is in most cases a question of fact, *see Murphy v. Hanover Ins. Co.*, 239 A.D.2d 323, 324 (2d Dep't 1997) (citation omitted), the issue may be decided as a matter of law in "exceptional" cases. *See Continental Cas. Co. v. Stradford*, 11 N.Y.3d 443, 449 (2008). Here, in light of the facts and circumstances of the case, including the eight-month delay between the

incident and Northfield's learning of it, the 19-day gap is reasonable as a matter of law. *See Quincy Mut. Fire Ins. Co. v. Enoe*, 107 A.D.3d 775, 776 (2d Dep't 2013) (finding 21-day delay in disclaiming coverage reasonable as a matter of law without further explanation); *Magistro v. Buttered Bagel, Inc.*, 79 A.D.3d 822, 825 (2d Dep't 2010) (finding a denial of coverage three weeks after receiving investigator's report reasonable as a matter of law); *Steinberg v. Hermitage Ins. Co.*, 26 A.D.3d 426, 428 (2d Dep't 2006) (finding a 28-day gap reasonable); *Blue Ridge Ins. Co. v. Jiminez*, 7 A.D.3d 652, 653 (2d Dep't 2004) (finding reasonable a 27-day delay in disclaiming coverage). Accordingly, Northfield's notice of disclaimer was timely under N.Y. Ins. Law § 3420(d), and it may therefore rely on that notice, as it has, to disclaim coverage.

## CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment is granted. The Clerk of the Court is respectfully requested to enter judgment accordingly and close the case.

SO ORDERED.

/s/
STEVEN M. GOLD
United States Magistrate Judge

Brooklyn, New York
May 10, 2017

U:\#ZAK 2016-2017\Northfield Ins. Co. v. Queen's Palace Inc. et al. (16cv471) (SMG)\Summary Judgment M&O - FINAL.docx